Case number 15-5325, AquaAlliance Appellant v. United States Bureau of Reclamation. Mr. Gennet for the appellant, Mr. Ross for the appellee. Shall I begin? Yes. Okay, thank you. Good morning and may it please the Court, my name is Matt Gennet and I'm representing the appellant AquaAlliance in this appeal. The question in this case is whether Exemption 9 of the Freedom of Information Act FOIA allows the does, whether the well depth and location information at issue here may be withheld given that there's no evidence that releasing it would cause competitive disadvantage to the well owners. And the second issue is under Exemption 4, whether that allows the withholding of well depth information alone given that this information was not given voluntarily to the government but was actually required for these well transfer substitution permits. Now I'd like to start by addressing something that was raised at the Bureau of Reclamation's brief on page 26, note 3, and this is the state records law change that happened in June of 2015. And it bears actually on both Exemption 4 and 9 because it shows now that this information is being routinely released and so can't cause competitive disadvantage. And I just wanted to first make sure, lest the Court think there's any mootness issue that it's absolutely not the case. The Supreme Court in the U.S. Department of Justice, Justice versus Tax Analysts, 492 U.S. 136 at 149 to 50, said that a party may bring a suit to force release of documents even if those documents are available from another agency or elsewhere. And then there's practical reasons why that state law doesn't suffice. One is it requires a fee with no fee waiver provision like FOIA. And it's a good check to see that all documents are released. Document release is not a perfect science and sometimes you get some documents from one entity that you don't get from another. So now I'd like to start talking about Exemption 9 and the issue of legislative history. Before you get to that, can I just ask, do you agree that if the information the government's possession is about the location of oil wells or the depth of oil wells, that it would be protected under Exemption 9? I don't know that the depth, I haven't thought about whether the depth information alone, if it doesn't really reveal any geophysical data about strata under the earth, I'm not sure that it would. I don't think the location alone certainly would not because I don't think that's geologic. You spend a lot of time talking about Exemption 9 protecting oil wells and I wasn't clear whether that meant that this information would be protected if it were oil well information but is not protected because it's water well. Am I wrong? Am I misunderstanding your argument? The map that showed the well location data, I don't think would be protected even if it was about oil wells. Well then why do we have to talk about legislative history? I don't understand why you have all this lengthy argument about water wells are different than oil wells if your position is that this information isn't protected no matter what type of well it is. Well I'm sorry if I presented the argument not as well as I could have. I'm just trying to understand so your argument that it's not geological or geophysical when it's location or depth. I'm trying to break out location and depth. I guess one of the reasons it's wrapped up is because in the oil and gas area, some of that information, perhaps if it could lead to a competitive disadvantage for the well owners, I think then if that fact were present, then you could definitely say if this is an oil well, it's definitely protected. I don't understand. I mean maybe a competitive disadvantage might come into Exemption 4 based on obligations to disclose but Exemption 9 says nothing about competitive disadvantage. It says it's a geophysical or geological information about wells, including maps. So I'm trying to figure out which part of Exemption 9 you think has not been met here. I thought it was wells, it's supposed to be oil wells, but if that's not the issue, is your argument focused on geological and geophysical? Well it's a two-part question. And my reference to competitive disadvantage was actually in the legislative history of Exemption 9 talking about that's the kind of technical information that would cause disadvantage that Congress was trying to get at when it passed that language. But our argument is an alternative. And I guess I went with the argument that it doesn't apply to water wells at all first because that seems like sort of a threshold question. But I do admit it's much easier to talk about, well, let's assume it could apply to water wells. Is this geologic or geophysical information? And I guess our point is that it's not, it doesn't meet the definition for that. So it's not location nor depth? Right. Neither one is geological or geophysical? Right. I think the location data is the most obviously clear that it's not. That's geographical data about the location. The government has conceded in the context of Exemption 4 that it doesn't cause competitive disadvantage or cause any problem for well owners. So that is the easiest. But I would say even the depth information is likewise not such information. We have the Black Hills case which found that, that it was not the kind of type of information. If maps are the type of information that can't be discussed, how can you make the argument that location isn't protected? I mean, a map describes location. Because what Exemption 9 states is it's geological or geophysical information including maps. So it has to be maps that reveal geologic and geophysical information. And again, the legislative history refers to seismic maps. So what they're talking about is maps that might show where you could find an oil strike or a gas strike. And in this context, it would reveal nothing of that sort. You can't swoop in and compete for water wells. They can only be drilled if you own the property. Knowing that someone has a water well on their property and how deep it's going to be drilled is not going to help you. You can't, like, make a claim on that person's property. Put aside competition, which isn't anywhere in the text. But how does knowing well depth not reveal geophysical information? It shows where the aquifers are or where the water is flowing, how deep down you have to go before you get to water. So I don't know why that wouldn't be quintessential geophysical information. Just focus on depth right now. Okay. Well, I think, for instance, the reason the Black Hills case didn't find it, and that even was in the context of a coal borehole, but still it found that depth information. The definition, we provided a dictionary definition of geologic. And it's not showing... I'm asking you why it's not geophysical to show where the aquifers are below the surface of the earth, where water is and where water is not. Because I think the definition of geophysical refers to more the structure of the underground... That would be exactly what it would be showing. It shows where the water aquifers are and where other strata are not. Well, it doesn't... It's not... It's only telling you how deep that water is, but... It doesn't say how much information in Exemption 9. It just says, does it reveal geophysical information? Well, when Your Honor asked, you know, why are we only talking about that, I guess that's the other reason, then, is the question of whether it can apply in the context of a water well at all. That's why I asked up front. So if this were revealing the depth of an oil well, it's geophysical whether it's an oil well or water well. It either is or isn't geophysical, but it would be the same... That wouldn't turn on the nature of the well that's on top. Either depth is or is not geophysical. Well, our argument is that it's not, but if you disagree with that, then I guess we would be left with the other argument about whether it applies to water wells or not. Okay. And then what do you do with the Supreme Court decision in Milner, which was Milner v. Department of the Navy, which was pretty emphatic that we don't look to the legislative history until we find textual ambiguity? Well... Under FOIA. So I guess there are different statutes that say... I mean, different cases which say different things. You also have cases, and we cite in our brief, which says if the statute is clear and not at odds with the legislative history, then... Which case is that? Well, the government's actual case, we cited one, but also in the... What is your case that says that it has to be both textually unambiguous and consistent with legislative history? Well, like the Burlington Northern case is the one I was going to cite from the Bureau's brief at page 1011. And it says, quote, absence of clearly expressed legislative intent to the contrary is only when you are considering the plain language alone. And, you know, we have the Washington Post case, the Supreme Court case there, where... But they found it to be ambiguous, where the text was ambiguous. Well, here we have the term wells. So it's ambiguous because we don't even know whether it means all wells or some wells. And the legislative history is so clear about what it applies to. So the statute says a person shall not do something that's ambiguous because we don't know whether it's referring to male persons or white persons or a person is... a noun is ambiguous because we don't know what adjectives could be used to modify the noun? That's your argument? Well, if the legislative history said this statute was really only intended to protect women, then that was something you should take into account when you are interpreting the statute or if it referred to people over the... So, you know, if it said persons and it was in a retirement context somehow and legislative history said this is for persons over the age of 65, you know, certainly I think you would take that into account when reading it. Whereas if someone came in and they're 45 years old and tried to claim a government benefit and said, oh, it just said persons, you say, yeah, well, but we're looking at the legislative intent and the Supreme Court has used the committee reports quite extensively to interpret the meaning of FOIA. And then you have on top of it that it must be... these FOIA exemptions must be narrowly construed. So when you take that admonition and you have legislative history which says this is about oil and gas wells, I do think that there is enough ambiguity in the term well that the court can look at this legislative history and talk about it and use it to interpret the statute. I think I'm about at my two minute that I'd reserve for rebuttal. So if there's no more questions now, I'll stop. Thank you. Thank you. May it please the court. Carl Ezekiel Ross on behalf of the U.S. Bureau of Reclamation. Your Honor, the Bureau of Reclamation respectfully requests that the court affirm the district court's decision for two reasons. First, because the plain language of the Freedom of Information Act and the canons of statutory interpretation support a finding that Exemption 9 applies to water wells. And secondly, because a finding that Exemption 9 applies to both well location and depth information is consistent with the plain language of the text and with this court's rulings. And finally, in the alternative, the Bureau requests that the court respectfully determine that the Bureau properly applied Exemption 4. First, the plain language of the Freedom of Information Act and canons of statutory interpretation support a finding that Exemption 9 applies to water wells. Both the Supreme Court in Milner and the Supreme Court in Park and Fly v. Dollar Park and Fly, Inc. stated that the statutory construction must begin with the language employed by Congress, the assumption that the ordinary meaning of that language accurately expresses the legislative purpose. In this particular case, the appellant is asking that this court take the plain and unambiguous language of geological and geophysical information, including maps, concerning wells, and determine that that information is ambiguous simply because Congress chose not to provide an exhaustive list. This court has repeatedly rejected attempts in the past to do such, and specifically rejected an attempt recently this year in SAC v. U.S. Department of Defense. In that particular case, the Freedom of Information Act provision in question dealt with educational institutions and the amount of duplication fees that should be applied to educational institutions. The appellant in that case argued, similar to the appellant in this case, that because Congress chose not to provide an exhaustive list of what qualifies as an educational institution, that the court should look past the plain language of the statute and actually look at the legislative history to determine that educational institutions would only apply to teachers and not students. This court specifically rejected the attempt to go past the plain language and try to create an exhaustive list through snippets of congressional legislative history and said that because the text of the statute refers to educational institutions without drawing a line between teachers and students, this court would not do so. And this court should similarly reject the appellant's request now that it go past the plain language of Exemption 9 which says that it applies to maps including wells and now determine what an exhaustive list of the type of wells that should apply under that exemption based on snippets or small parts of the legislative history. Can you explain to me how location of oil wells is either geologic or geophysical information? I'm sorry, of any well, oil well, water well. How is location geologic or geophysical? Well, Your Honor, the court need not look much further than, to answer the court's direct question, the appellant actually argues that the surface maps that show the location on the surface is not geological or geophysical information because it shows where information is on the surface and it's not subterranean and essentially requested this court find what Congress chose not to do and add provisions into this exemption that it only applies to subterranean information. And this court in Public Employees for Environmental Responsibility I'm just trying to understand what... I mean, not every surface map is geologic information. Is it? Your Honor, if the map is concerning wells and it shows where the location of that well is then under the ordinary language it could be geophysical information. It may not be a geological information where it's showing exactly where it is in the ground. The depth information would be that. But the information showing exactly even where it is on the surface could be considered geophysical information. How? Well, this court's recent decision in Public Employees for Environmental Responsibility versus Hopper, while it was under the context of the EPA and its requirement that it take a hard look at, quote, geological and geophysical information the court said that they failed to do so when it was looking at the surface of the oceanic surface and whether particular structures that were being created would be able to withstand the effect on the oceanic surface. And so in that particular case the information that was being discussed was not subterranean, but it was surface information even though it was oceanic information. It was a composition of the surface of their underwater earth. But it was composition of it, whether it was rocky, sandy, that type of stuff, which sounds geologic. But I'm assuming you could have, you know, in this day with Google Maps, you could just look at any given area and see here's all the subdivisions, here's all the houses, here's all the streets, and there's a water well. Just looking at that, and that wouldn't be geologic information, would it? Your Honor, just looking at Google Maps to say that there is something that's there may not be considered geological information, but maps showing actual location, whether it's on the actual surface or slightly below the surface if we're looking at the ordinary meaning of those terms could be considered geological or geophysical information. It's the government's position. It is geological or geophysical information where it's showing exactly where the water well starts even if that map is showing where that water well starts above the surface and not subterranean. So if you have an ordinary map of a subdivision, maybe from a satellite, and that shows the houses, the streets, and also where some water wells are on property because it's a really good satellite, would that be protected under Exemption 9, that entire map? Your Honor, I don't know about the entire map. In this specific case, the only information that was withheld, there's lots of information that was disclosed. The information that was withheld was specific information regarding the actual well location specifically, not necessarily other parts of a map and information regarding the well depths specifically. Well, if you disclose all of the map except you black out the parts where the wells are and you say Exemption 9, then everyone's going to know exactly where the wells are, right? That's correct, Your Honor. That's correct. That doesn't seem helpful. That's correct. So I guess in the example that you gave, yes, the information that would be included on a map that shows where the water well reaches the surface or a surface map that shows exactly where the water well is located would also fall into that information, Your Honor. Is that not information just publicly viewable in this day and age? Can people not just see this from... Usually FOIA is not protecting stuff that's already just publicly seeable. That's correct, Your Honor. But in this particular case, although Pelham points to the fact that there is now a law in California that indicates that some of this information is publicly available through... At the time that law was not in place and at the time that these FOIA exemptions were applied, that law was in the... Yeah, but the government will usually, if something happens, if it's protecting something and then during the course of FOIA litigation it's learned that information is now publicly available, the government will usually revisit its position and go ahead and release the information. Your Honor, it may in certain circumstances make a discretionary release in the circumstances that you described, but it's not necessary that the government is mandated to make that release subsequent, some years later, based on the change of law. And the particular change of law in question only applies, I believe, to some of the information that the appellant is asking or seeking. Did we know whether these well locations are now publicly available information, whether through California or some other mechanism? Your Honor, I believe that through a revised California law, there is some of this well location information that is now publicly available. Some, but not all, is what you're saying? I believe so, Your Honor. You believe some of it is not available under California law? I believe so, Your Honor. I mean, I know that the information that was submitted was voluntarily submitted. It was not information that was required in order for these water well transfers to be effected, and that some of the information regarding some of the surface maps, I believe, may be publicly available now. I'm not certain whether all of the depth information is publicly available as well. Can I ask you a question on the Miller Declaration? What I'm very confused about is whether, for purposes of Exemption 4, whether well depth information is required in order to process a water transfer because the Declaration keeps talking about well completion information, but doesn't tell me whether well depth information specifically is required for a water transfer. And the White Paper, it implies that it's not, but then the White Paper says it is required. So how are we supposed to know whether it's required or not? Well, Your Honor, the well completion reports were specifically what the Milner Declaration is referring to. The well completion reports included information regarding both depth and location. And so when it talks about well completion, it is referring to all of that information. And the Milner Declaration also says that it was not mandatory that this information be provided, while part of the assessment that does take place is to determine exactly how close these wells are to fleet-flowing rivers to make sure that the water that's being transferred and sold... I see my time is up, but if I may continue to finish your question. To make sure that the information that's being sold is not information that's being siphoned from a river. And so while that type of inquiry does take place, the Milner Declaration indicated that without these well completion reports showing both depth and location information, these particular water transfers have been granted in the past, and so it was not a mandatory portion. Okay. If there are no other questions, thank you. Thank you. Okay. Mr. Kenna, we'll give you a minute for rebuttal. Okay, thank you. First of all, I think all the information that we're seeking is releasable now through the State Records Act, and we would not be opposed to submitting a letter brief or something by each side to determine that question. And second, on the issue of whether the well depth information was submitted voluntarily, as Your Honor points out, Judge Millett, that the appendix at page 29 to 30, the technical information paper, clearly requires it, and the Milner Declaration never even addresses that to try and say, oh, it doesn't mean what it says what it means. And as the Reporters Committee case shows, the burden of proof is on the government to make their case, and if they do not make the case which they did not do through a conclusory statement that was contradicted by the record, then they must lose that claim of exemption. Thank you. Okay. Thank you. The case will be submitted.
judges: Brown, Millett, Wilkins